UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

UNITED STATES OF AMERICA

CASE NO.  2:17-CR-00040-01
(2:21-CV-01580)

VERSUS

DAMIEN GUIDRY

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE KAY

## RULING

Before the Court is Defendant Damien Guidry's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] The Government has filed a memorandum in opposition,[2] to which Guidry has filed a reply.[3] Having reviewed the motion and briefing, the record, and the applicable law, the motion is DENIED.

## I.
### BACKGROUND

On February 9, 2017, a grand jury returned a five-count indictment charging Guidry with distribution of cocaine (Count 1), possession with intent to distribute marijuana (Count 2), felon in possession of a firearm (Count 3), conspiracy to distribute and possess with intent to distribute cocaine (Count 4), and felon in possession of a firearm (Count 5).[4] Thereafter, the Government filed an "Information of Prior Conviction" pursuant to 21 U.S.C. § 851, providing notice that in

---

[1] ECF No. 143. Although this § 2255 action exists as an independent civil suit, all relevant documents were filed in the related criminal action (Case No. 2:17-CR-00040-01). Thus, all record citations in this Ruling are to the criminal docket.
[2] ECF No. 146.
[3] ECF No. 149.
[4] ECF No. 1.

light of Guidry's prior conviction for a felony drug offense, the United States would seek the enhanced penalties of 21 U.S.C. § 841.[5]

On November 30, 2018, Guidry pleaded guilty to counts 2 and 4 pursuant to a written plea agreement. The plea agreement provided in relevant part:

> This document contains the complete plea agreement between the Government and DAMIEN GUIDRY, the Defendant. No other agreement, understanding, promise, or condition exists, nor will any such agreement, understanding, promise or condition exist unless it is committed to writing in an amendment attached to this document and signed by the Defendant, an attorney for the Defendant, and an attorney for the Government.
>
> . . . .
>
> . . . DAMIEN GUIDRY shall appear in open court and plead guilty to Counts Two and Four of the Indictment pending in this case.
>
> . . . .
>
> DAMIEN GUIDRY understands and agrees that:
>
> 1.    the maximum punishment on Count Two is a term of imprisonment of not more than five (5) years . . . .;
>
> 2.    the maximum punishment on Count Four is a term of imprisonment of not less than five (5) years nor more than forty (40) years . . . ;
>
> . . . .
>
> 10.    . . . he has discussed the Sentencing Guidelines and their applicability with his counsel, and understands and acknowledges that a final determination of the applicable guidelines range cannot be made until the completion of the presentence investigation;
>
> 11.    the sentencing judge alone will decide what sentence to impose; and
>
> 12.    the failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be a basis for setting aside the guilty plea which is the subject of his agreement.
>
> . . . .

---

[5] ECF Nos. 52, 90; *see also* 21 U.S.C. § 841 (West 2016).

> I have read this plea agreement and have discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.
>
> I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.
>
> I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related to this case. [6]

The portion of the plea packet entitled "Affidavit of Understanding of Maximum Penalty and Constitutional Rights" also provided notice that Guidry faced a mandatory term of imprisonment of five years on Count 4, up to a maximum term of forty years.[7] Guidry again affirmed that his decision to enter a guilty plea was "free and voluntary" and was made "without any threats or inducements whatsoever (except the Plea Agreement)."[8]

At rearraignment, after being placed under oath, Guidry affirmed that he was satisfied with his counsel's advice and representation.[9] He further affirmed that he understood he had the right to pursue his original plea of not guilty.[10] The Court advised Guidry that the maximum penalty for Count 2 was a five-year term of imprisonment, and that Count 4 mandated a minimum term of imprisonment of five years and a maximum term of forty years, which Guidry acknowledged he understood.[11] Guidry affirmed that he reviewed and discussed the plea agreement with his attorney before he signed it.[12] He affirmed that the plea agreement represented any and all understandings

---

[6] ECF No. 96 at 1-4, 6-7.
[7] ECF No. 96-1 at 1.
[8] *Id.* at 1-2.
[9] ECF No. 128 at 5.
[10] *Id.* at 6.
[11] *Id.* at 13.
[12] *Id.* at 15.

he had with the government.[13] He affirmed that he was aware that he had a duty to disclose to the Court the existence of any agreement relating to his plea, and Guidry's counsel confirmed that all formal plea offers had been conveyed to Guidry.[14]

The prosecuting attorney then summarized the plea agreement, stating that in exchange for Guidry's agreement to plead guilty to Counts 2 and 4 (and his agreement to forfeit certain property to the Government), the Government would dismiss the remaining charges, it would not prosecute Guidry for any other offenses known to the Government based on the investigation underlying the Indictment, and it would move for a one-level reduction to Guidry's guideline offense level for acceptance of responsibility.[15] The Government reiterated that Guidry acknowledged in the plea agreement that the Court would ultimately decide the sentence to be imposed and that "the failure of the sentence to adhere to a sentencing recommendation tendered by counsel wouldn't be a basis to set aside the plea."[16] Finally, the government advised that, separate and apart from the plea agreement, it intended to withdraw the § 851 Information of Prior Conviction after Guidry's plea was accepted by the Court.[17] Both Guidry and his counsel confirmed that the substance of the plea agreement had been correctly stated by the Government.[18]

After verifying his signatures on the documents in the plea agreement, Guidry again affirmed that no promises or assurances had been made outside of the written plea agreement to persuade him to accept it, and he affirmed that no one had threatened him in any way to persuade him to accept the agreement.[19] Guidry further affirmed that the he understood the Court could

---

[13] *Id.*
[14] *Id.* at 15-16.
[15] *Id.* at 16; *see also* ECF No. 96 at 2.
[16] ECF No. 128 at 17.
[17] *Id.* at 18.
[18] *Id.*
[19] *Id.* at 20.

reject the recommendations in the plea agreement and impose a sentence that was more severe than he anticipated, that no one had made any prediction or promise as to what his sentence would be, that he understood the Court would not be able to determine his advisory guideline range until after completion of the presentence investigation report, that he understood the sentence ultimately imposed could be different from any estimate that may have been provided by his counsel, and that he understood the Court could depart or vary (upward or downward) from the sentencing guideline range.[20] At the conclusion of the hearing, Guidry entered a plea of guilty, which the Court accepted. The government then withdrew the § 851 Notice.[21]

Prior to sentencing, counsel for Guidry filed Objections to the Presentence Report, wherein he stated that before accepting the government's plea offer, Guidry wanted to know "roughly what Guideline range" would apply to his conduct.[22] Therefore, counsel for Guidry and the government met with the Office of Probation "to do a pre-plea Guideline calculation."[23] According to Guidry's counsel, if the Court found Guidry possessed a firearm in connection with the offense, the probation officer estimated Guidry's offense level to be 23, with a guideline range of 57–71 months imprisonment; if the Court found the firearm enhancement to be inapplicable, the probation officer estimated Guidry's offense level to be 21, with a guideline range of 46–57 months.[24] Counsel then states, "With those calculations, the defendant decided to accept the Government's plea offer."[25] Nevertheless, counsel confirmed that he had explained to Guidry "how the Guidelines work," that

---

[20] *Id.* at 20-21.

[21] *Id.* at 22-23. Had the government pursued enhanced penalties, Guidry would have faced a sentence of up to 10 years on Count 2 (versus 5 years without the enhancement), and a sentence of 10 years to life on Count 4 (rather than 5 to 40 years). 21 U.S.C. § 841(b)(1). (West 2016).

[22] ECF No. 103 at 16.

[23] *Id.* at 16-17.

[24] *Id.* at 17. These calculations did not include the 2-level increase for obstruction of justice, and they underestimated Guidry's criminal history category by two levels. *See* ECF No. 118 at 15, 22; ECF No. 129 at 87-88.

[25] ECF No. 103 at 17.

Guidry "understood that even with a recommended sentence range, the judge retains the final decision on calculating the Guideline range and on the sentence," and that he also understood the Court could impose a sentence outside of the guideline range[26]

At the sentencing hearing, the Court heard arguments as to an appropriate sentence and whether a variance from the sentencing guidelines was appropriate.[27] Counsel for Guidry repeated the forgoing recitation of events and argued that the pre-plea guideline calculation "creates, I think, some reasonable expectations even though, you know, Damien knows, and we understand, that ultimately the Court makes the final decision."[28] Counsel concluded his argument by stating, "So we submit that that [pre-plea] range would be something that would be reasonable in this case given the circumstances of this case."[29] After addressing the arguments of counsel and the statutory sentencing factors, the Court imposed a within-guideline sentence of sixty months on Count 2 and 115 months on Count 4, with the sentences to run concurrently. The United States Court of Appeals for the Fifth Circuit affirmed, and the United States Supreme Court denied Guidry's petition for a writ of certiorari.[30]

Guidry now collaterally challenges his sentence, asserting ineffective assistance of counsel. Specifically, Guidry contends he only agreed to plead guilty because counsel "falsely" led him to believe that "the 'starting point' on the sentencing guidelines would be either a level 21 or 23 with a criminal history of 4 points,"[31] and that, at worst, his guideline range would be 57 to 71 months.[32] Guidry further asserts that had counsel accurately advised him of his sentencing guideline range,

---

[26] *Id.* at 16.
[27] ECF No. 129 at 84-90.
[28] *Id.* at 89-90. Counsel additionally repeated that Guidry understood the sentencing guidelines are advisory only. *Id.* at 88.
[29] *Id.* at 90.
[30] ECF Nos. 130, 131.
[31] ECF No. 143 at 3.
[32] ECF No. 143-2 at 9.

he would have insisted on proceeding to trial.[33] Because Guidry has not shown his counsel's performance was deficient, nor that he was prejudiced by any alleged inaccurate calculation of his guideline range,  the Court finds collateral relief is unavailable.

## II.
### APPLICABLE LAW

**A.   28 U.S.C. § 2255**

Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted.[34] As a result, the grounds upon which a prisoner may test the legality of his detention are narrow, to wit: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack."[35] Thus, movants seeking collateral review are limited to alleging errors of constitutional or jurisdictional magnitude, as well as "a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[36]

**B.   Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence."[37] The Sixth Amendment requires effective assistance of counsel at all critical stages of a criminal proceeding, including "advis[ing] a defendant concerning whether he should enter a

---

[33] ECF No. 143 at 2.
[34] *U.S. v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995).
[35] 28 U.S.C. § 2255(a).
[36] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992); *Samuels* at 528.
[37] U.S. CONST. amend. VI.

plea of guilty."[38] To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate that "(1) his counsel's performance fell below an objective standard of reasonableness, and (2) that his counsel's deficient performance caused him prejudice."[39] A failure to establish either element of the test mandates a finding that counsel's performance was constitutionally effective.[40]

Courts assess the first element "from counsel's perspective at the time of the alleged error and in light of all the circumstances."[41] Scrutiny of counsel's performance must be highly deferential, and courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[42] As to the second element, a prisoner demonstrates prejudice if he shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[43] In the context of a guilty plea, this requires the movant to show that there is a reasonable probability that he or she "would not have pleaded guilty and would have insisted on going to trial."[44] The likelihood of a different result must be substantial, and not merely conceivable.[45] The inquiry "focuses on a defendant's decisionmaking." [46] Courts should not set aside a guilty-plea conviction "solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's

---

[38] *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir.2004); *see also Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

[39] *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Grammas*, 376 F.3d at 436); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[40] *Strickland*, 466 U.S. at 697.

[41] *United States v. Scott*, 11 F.4th 364, 369 (5th Cir. 2021) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.")

[42] *Scott*, *supra* (quoting *Strickland* at 689).

[43] *Valdez* at 402 (quoting *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002)).

[44] *Id.* at 402-03 (quoting *Hill*, 474 U.S. at 59).

[45] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

[46] *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017).

deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."[47] "Factors relevant to determining whether a defendant would have gone to trial can also include the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments."[48]

### III.
### ANALYSIS

The Court finds Guidry has failed to carry his burden under § 2255. As set forth in detail above, Guidry was advised both through his written plea agreement and by the Court at rearraignment that by pleading guilty, he was subjecting himself to a statutory maximum period of imprisonment of forty years on Count 4.[49] He affirmed in his plea agreement and swore in open court that no specific prediction or promise had been made to him about what his sentence would be, that he had not been threatened in any way in order to persuade him to accept the plea agreement, that he understood the Court would not be able to determine his advisory guideline range until after completion of the presentence investigation report, and that he understood that the sentence ultimately imposed could be different from any estimate his counsel may have provided to him.[50]

"[O]fficial documents—such as a written plea agreement—are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'"[51] Further, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity."[52] Thus, a defendant ordinarily

---

[47] *Lee* at 1967.
[48] *Valdez*, 973 F.3d at 403 (internal quotation marks and alteration omitted).
[49] ECF Nos. 96 at 3; 96-1 at 1; 128 at 13.
[50] ECF Nos. 96 at 4, 6-7; 96-1 at 1-2; 128 at 20-21
[51] *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).
[52] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019).

may not refute sworn testimony made at a plea hearing while under oath.[53] Nevertheless, a defendant may seek collateral relief on the basis of counsel's alleged promises (even though inconsistent with defendant's statements made in open court) by proving: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."[54] To satisfy this burden, the defendant must produce "independent indicia of the likely merit" of the alleged promise, "typically in the form of one or more affidavits from reliable third parties."[55] However, if the defendant's showing "is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record," the Court may dismiss the claim.[56]

Here, aside from Guidry's self-serving declaration,[57] he has not provided any evidence of when and where counsel made any promise as to his sentence, nor has he identified any eyewitness to that alleged promise. Moreover, Guidry's testimony, the statements made by his counsel in open court, and the plain terms of the plea agreement clearly refute his allegations that his attorney promised he would receive a lower sentence. In light of the strong presumption that Guidry's counsel acted competently and that Guidry's statements made in open court while under oath were truthful, as well as the great evidentiary weight afforded to the plea agreement, the Court finds Guidry has failed to show his counsel's performance fell below an objective standard of reasonableness.

---

[53] *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir 1998).
[54] *McDaniels*, 907 F.3d at 371 (quoting *Cervantes*, 132 F.3d at 1110).
[55] *Cervantes* at 1110.
[56] *Id.* at 1110, 1111.
[57] ECF No. 143-1.

Likewise, Guidry has failed to show that but for counsel's alleged deficient performance, he "would not have pleaded guilty and would have insisted on going to trial."[58] The only contemporaneous evidence Guidry points to in support of this element is the length of time that passed before the parties discussed a plea agreement.[59] But this says nothing about the fact that Guidry did ultimately decide to enter into a plea agreement with the Government and never moved to withdraw that plea. Further, Guidry does not argue that he had any defense to the charges, nor does he claim he might have been acquitted at trial.[60] As previously noted, had Guidry proceeded to trial, he would have faced an enhanced penalty of ten years to life on Count 4; by pleading guilty, Guidry was able to lower his statutory sentencing range to five to forty years. He additionally was able to lower his guideline range by receiving a three-level reduction to his offense level for acceptance of responsibility. And again, by the time the Court accepted Guidry's guilty plea, Guidry was clearly aware that he faced a maximum possible prison term of forty years, that his attorney's estimate of his sentencing guideline range could be incorrect, and that his attorney's estimate was not binding on the Court.[61] All of these considerations weigh heavily against any claim of prejudice.[62] For these reasons, the Court finds Guidry has failed to show there is a reasonable probability that but for his counsel's incorrect estimate of his sentencing guideline range, he would have insisted on proceeding to trial.

---

[58] *Valdez* at 402-03.

[59] ECF No. 143-2 at 3 ("In this case, Movant was adamant on asserting his innocence, and proceeding to trial. (See generally D.E.'s 1 thru 90). After years of trial preparation the parties discussed a plea deal.")

[60] In light of the evidence supporting the charges, it appears Guidry had little chance of success at trial. *See* ECF No. 118 at 4-7; *see also Lee*, 582 U.S. at 367 (A defendant without any viable defense "will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.").

[61] *Lee* at 369 (courts should use "contemporaneous evidence" to substantiate a defendant's claims).

[62] *Valdez* at 403-05.

## IV.
### CONCLUSION

Because the motion and record conclusively show that Movant Damien Guidry is entitled to no relief, the Court finds that the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 must be denied, and no evidentiary hearing is necessary.[63]

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court will deny a certificate of appealability, as it finds movant has failed to demonstrate a substantial showing of the denial of a constitutional right.[64]

THUS DONE in Chambers on this 2nd day of May, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[63] A § 2255 movant is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" on the underlying claims. 28 U.S.C. § 2255(b); *see also McDaniels*, 907 F.3d at 370; *U.S. v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (A defendant is entitled to an evidentiary hearing only if he presents "independent indicia of the likely merit of [his] allegations.").
[64] *See e.g. Welch v. United States*, 578 U.S. 120, 127 (2016); *U.S. v. Ratliff*, 719 F.3d 422, 424 (5th Cir. 2013).